**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-0117-WJM-STV

WINTERWHEAT MARQUEZ,

    Plaintiff,

v.

AMRG HOLDINGS, a Colorado limited liability company,
QUALITY CARE RESOURCE CENTER, a Colorado limited liability company,
KENNETH DANIEL, individually and in his official corporate capacity, AND
DAVID G. KEOWN, JR., individually and in his official corporate capacity,

    Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

This matter is before the Court on Plaintiff Winterwheat Marquez's ("Plaintiff") Motion for Default Judgment ("Motion") (ECF No. 15) as to Defendants AMRG Holdings, Quality Care Resource Center, Kenneth Daniel, and David G. Keown, Jr. (collectively, "Defendants"). For the following reasons, the Motion is denied.

**I. BACKGROUND**

The Court takes the following facts from Plaintiff's Complaint (ECF No. 1) which, as a result of Defendants' default, are deemed admitted.

Plaintiff was employed by Defendant Quality Care Resource Center ("Quality Care"), a call center. (ECF No. 1 ¶¶ 21, 28.) Defendants AMRG Holdings, Daniel, and Keown jointly own Quality Care. (*Id.* ¶ 38.) Plaintiff worked as a telemarketer from

approximately August 11, 2019 until November 1, 2019.  (*Id.* ¶ 11.)  Plaintiff earned $13 per hour, plus occasional commissions and bonuses.  (*Id.* ¶ 42.)

Plaintiff's final workweek was the week of October 27, 2019 through November 2, 2019.  (*Id.* ¶ 46.)  She received her final paycheck on November 11, 2019.  (*Id.*)  When Plaintiff attempted to cash her paycheck, however, it was returned due to insufficient funds.  (*Id.* ¶ 47.)  As a result, Plaintiff was never compensated for her final week of employment.  (*Id.* ¶ 50.)  The paycheck amount was $520.59.  (*Id.*)

Plaintiff also alleges that Defendants did not pay her the appropriate overtime rate of 1.5 times her standard rate of pay for time in excess of 40 hours per week.  (*Id.* ¶¶ 87–89.)  Specifically, she contends that on two occasions Defendants calculated her overtime rate based on her standard hourly rate of $13, but did not include her bonuses or commissions in the calculation.  (*Id.* ¶¶ 55–59.)  She asserts that this error resulted in an unpaid sum of $6.87. (ECF No. 15 at 8.)

Plaintiff brings this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101 *et seq.*, and the Colorado Wage Act, Colo. Rev. Stat. §§ 8-4-101 *et seq.*  (*Id.* ¶¶ 80–106.)  Plaintiff seeks $1,515.59 in damages, which represents her alleged unpaid regular and overtime wages, including statutory penalties.  (ECF No. 15 at 9.)

Plaintiff filed her Complaint on January 15, 2020.  (ECF No. 1.)  After Defendants failed to appear or otherwise defend, Plaintiff obtained the Clerk's Entry of Default on April 9, 2020.  (ECF No. 12.)  Plaintiff filed her present Motion on July 2, 2020.  (ECF No. 15.)

## II. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party," in order to avoid further delay and uncertainty as to the diligent party's rights. *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

## III. ANALYSIS

Before granting a motion for default judgment, the Court must ensure that it has subject-matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.").

### A.     Jurisdiction

The Court finds it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's FLSA claims arise under federal law. Pursuant to 28 U.S.C. § 1367,

the Court finds that it has supplemental jurisdiction over Plaintiff's state law claims, as they arise out of the same set of operative facts, namely, Defendants' failure to pay Plaintiff her owed wages.

Plaintiff alleges that Quality Care and AMRG Holdings are Colorado limited liability companies, and that Daniel and Keown are Colorado residents. (ECF No. 1 ¶¶ 14, 18, 26; ECF No. 10-2.) Additionally, Plaintiff alleges that she served all Defendants in Aurora, Colorado. (ECF Nos. 10, 10-1, 10-2 & 10-3.) Accordingly, the Court properly exercises personal jurisdiction over all Defendants. *See Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1032 (D. Colo. 2015)

**B.     FLSA Claims**

The basis of Plaintiff's FLSA claims is that Defendants never compensated her for her final week of work, as her paycheck did not clear her bank, and that Defendants did not compensate her at the proper overtime rate. (ECF No. 1 ¶¶ 80–91.) She alleges that Defendants violated 29 U.S.C. §§ 206 and 207(a). (*Id.* ¶¶ 76, 82.)

In order to establish liability under the FLSA, a plaintiff must show that: (1) she was employed by the defendant during the relevant time; (2) in the plaintiff's work for the defendant, she was engaged in commerce or the production of goods for commerce, or she was employed by an enterprise engaged in commerce or the production of goods for commerce that had annual gross sales of at least $500,000; and (3) that the defendant failed to pay plaintiff minimum wage for all hours worked, or that the defendant failed to pay plaintiff overtime for all hours worked in excess of 40 hours

in a one or more workweeks.  See *Murphy v. AllStaff Homecare, LLC*, 2019 WL 4645440, at *3 (D. Colo. Sept. 24, 2019); 29 U.S.C. §§ 203(s)(1)(A)(ii), 206(a), 207(a).

      i.    *Employment Relationship*

The Tenth Circuit has adopted the economic realities test for determining the existence of an employment relationship under the FLSA.  *Doty v. Elias*, 733 F.2d 720, 722–23 (10th Cir. 1984).  The Tenth Circuit has set out six factors for courts to consider in performing this test:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

Here, Plaintiff alleges that Defendants possessed the abilities to hire and fire Plaintiff, to supervise Plaintiff's work schedule and conditions of employment, and to determine rates and methods of payment of Plaintiff.  (ECF No. 1 ¶¶ 28, 29, 33.)  Plaintiff also alleges that Daniel and Keown were responsible for Plaintiff's day-to-day operations and had direct responsibility for the supervision of Plaintiff.  (*Id.* ¶ 33; ECF No. 15 at 5.)  Taking these allegations as true, the Court finds that Plaintiff was an employee of Defendants under the economic realities test.

      ii.    *Enterprise and Individual Coverage*

Plaintiff alleges that Defendants comprised an "enterprise engaged in commerce" at all times material to this claim.  (*Id.* ¶ 27.)  A business is considered an "enterprise engaged in commerce" if it has employees engaged in interstate commerce and a gross

5

volume of sales made or business done of at least $500,000.  29 U.S.C. §§ 203(s)(1)(A)(i)–(ii).

Plaintiff's only allegation as to Defendants on this issue is that they were "an enterprise engaged in commerce that had annual gross sales of at least $500,000." (ECF No. 1 ¶ 39.)  Plaintiff does not allege that Defendants "engaged in commerce or the production of goods for commerce" as required for enterprise coverage.  Rather, she alleges that Defendants are in the business of "credit repair," which suggests services rather than the sale of goods.  (ECF No. 1 ¶ 11.)

Courts in this District have held that conclusory allegations such as the mere statement that an employer was an enterprise engaging in interstate commerce are insufficient to establish enterprise coverage.  *See Topp v. Lone Tree Athletic Club, Inc.*, 2014 WL 3509201, at *6–*7 (D. Colo. July 15, 2014) (declining to find enterprise liability where the plaintiff alleged only that the defendant "was an enterprise engaged in interstate commerce or in the production of goods for consumers").  Given Plaintiff's threadbare allegations which fail to raise any facts suggesting the interstate nature of Defendants' operations, the Court cannot conclude that Defendants are subject to enterprise coverage.

Plaintiff also posits that Defendants are subject to individual coverage because she interacted with customers using a telephone.  (ECF No. 1 ¶¶ 41–42; ECF No. 15 at 6.)  To establish individual coverage, however, an employee "must directly participat[e] in the actual movement of persons or things in interstate commerce."  *Reagor v. Okmulgee Cnty. Family Res. Ctr.,* 501 F. App'x 805, 809 (10th Cir. 2012) (internal

quotations omitted). This mandate means that the employee "must either work for a transportation or communication industry employer or regularly and recurrently use an instrument of interstate commerce, such as a telephone." *Daley v. Alpine Urology, P.C.*, 2016 WL 1460306, at *2 (D. Colo. Apr. 13, 2016).

In asserting individual coverage, Plaintiff relies heavily on the fact that she used a telephone to communicate with customers. (ECF No. 1 ¶¶ 41–42; ECF No. 15 at 6.) She does not allege, however, that she communicated with customers in other states, which is a central point here given that a telephone can clearly be used for intrastate calls only. Plaintiff also alleges that, at all relevant times, she "was engaged in commerce or the production of goods for commerce." (ECF No. 1 ¶ 40.) Plaintiff does not specify what such goods she refers to, and the sparse facts indicate only that she contacted potential customers to advertise credit-related programs. (*Id.* ¶ 11.)

The Tenth Circuit has stated that mere use of an instrumentality, without the added layer of interstate interaction, is not sufficient to establish individual coverage. *See Reagor*, 501 F. App'x at 810 (declining to find individual coverage where plaintiff "does not assert that her use of the telephone was a regular and recurrent part of her duties or that she used the telephone for interstate communications"). District of Colorado courts have similarly rejected assertions of individual coverage where a plaintiff fails to establish that "a regular, recurrent, or substantial part of [the plaintiff's] job was to engage in interstate commerce." *Daley*, 2016 WL 1460306, at *4.

Plaintiff's allegations as to the interstate nature of her employment activities are scant at best.  Even construing the allegations in the light most favorable to Defendants, the Court cannot conclude that either enterprise or individual coverage exists.

Because Plaintiff has not plausibly alleged facts which state a claim for relief under the FLSA, the Court on its own motion dismisses the Complaint without prejudice.[1]  Plaintiff may file an amended complaint which cures the pleading deficiencies noted in this Order.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion (ECF No. 15) is DENIED;

2. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE; and

3. Plaintiff is GRANTED LEAVE to file an amended complaint and renewed motion for default judgment no later than **February 22, 2021**.

Dated this 5th day of February, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

[1]  The Court declines to reach Plaintiff's claims brought under Colorado state law, as Plaintiff's sole federal claim is deficient.  *See Smith v. City of Enid by & ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998) (citations omitted) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").